# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

DERRICK LEE RIDDLE,                          Case No. 20-CV-1262 (ECT/ECW)

                Petitioner,

v.                                           **REPORT AND RECOMMENDATION**

THE STATE OF MINNESOTA, RAMSEY
CO., DEPARTMENT OF CORRECTIONS,
JOHN CHOI, and KEITH ELLISON,

                Respondents.

---

This matter is before the undersigned United States Magistrate Judge on Petitioner Derrick Lee Riddle's application for a Writ of Habeas Corpus by a Person in State Custody arising under 28 U.S.C. § 2254 (Dkt. 1); Derrick Lee Riddle's Amended application for a Writ of Habeas Corpus by a Person in State Custody arising under 28 U.S.C. § 2254 (Dkt. 17); Derrick Lee Riddle's Additional Ground for Amended Petition (Dkt. 18); Derrick Lee Riddle's Supplemental Petition (Dkt. 19); Respondents' Motions to Dismiss (Dkts. 6, 25); Petitioner Derrick Lee Riddle's Motions for a Speedy Hearing (Dkts. 22, 32); and Petitioner Derrick Lee Riddle's Questions to the Courts/M[a]gistrate Judge (Dkt. 34). This case has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, this Court recommends dismissal of this action.

# I.    FACTUAL BACKGROUND

In December 2017, the State of Minnesota charged Riddle with one count of a pattern of stalking conduct, in violation of Minn. Stat. § 609.749, subd. 5(a) (2016); two counts of a third or subsequent violation of the stalking statute, in violation of Minn. Stat. § 609.749, subd. 4(b) (2016); and one count of felony domestic assault, in violation of Minn. Stat. § 609.2242, subd. 4 (2016).  *See State v. Riddle*, No. A19-0222, 2020 WL 773303, at *1 (Minn. Ct. App. Feb. 18, 2020), *rev. denied* (May 19, 2020).[1]

The criminal complaint alleged that Riddle violated an order for protection ("OFP") between February 1, 2017, and November 10, 2017, and that Riddle assaulted his victim on August 17, 2017.  *Id.*

Riddle was arrested on February 28, 2018.  *Id.*  On March 13, 2018, Riddle was released from custody after posting bail.  *Id.*  At a March 26, 2018 omnibus hearing, Riddle pleaded not guilty and demanded a speedy trial.  *Id.*  A pre-trial conference was scheduled for April 26, 2018, and trial was initially scheduled for May 21, 2018.  *Id.*

At the April 26, 2018 pre-trial conference, Riddle's public defender informed the district court that there was no plea agreement and that the case would proceed to trial.  *Id.*  On May 21, 2018, the day on which trial was scheduled to begin, a newly assigned

---

[1]    "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)) ("[A] federal court . . . presumes that the state court's factual determinations are correct," and such a presumption "may be rebutted only by clear and convincing evidence.").

public defender appeared with Riddle, who informed the district court that he would be unavailable for the remainder of the month and requested that the trial be continued. *Id.* The district court noted that Riddle had made a speedy-trial demand, rescheduled the trial for the weeks of June 4 and June 11, 2018 while noting that the rescheduled trial dates were beyond the 60-day speedy-trial deadline, but found that the reasons stated by Riddle's public defender provided good cause to continue the trial for two or three weeks. *Id.*

The parties appeared for trial on June 4, 2018. *Id.* Jury selection began that day and continued into the following day. *Id.* After a jury had been selected, Riddle addressed the district court and requested permission to proceed pro se with his public defender serving as advisory counsel on the basis that Riddle had met his new public defender only two weeks earlier, had not communicated with him since then, and had given his public defender evidence that the public defender apparently was not planning to use at trial. *Id.* Riddle also espoused his belief that public defenders have a conflict of interest because they are employed by the state. *Id.* The district court granted Riddle's request, but appointed hm different standby counsel in light of the concerns expressed by Riddle. *Id.* The district court ruled that it would appoint an attorney who is unaffiliated with the public defender's office to serve as advisory counsel and that, to accommodate that appointment, the trial would need to be continued to the week of July 30, 2018. *Id.* The district court found that the need to appoint new advisory counsel provided good cause to further continue the trial for an additional six weeks despite Riddle's speedy-trial demand. *Id.*

On Friday, July 27, 2018, a private attorney was appointed advisory counsel.  *Id.* at *2.  When the case was called for trial on Tuesday, July 31, 2018, the state requested a continuance until the next trial block, which was in September 2018, on the ground that the trial likely would run into the following week, when several of its witnesses were unavailable.  *Id.*  Riddle objected to the state's request, however, the district court granted the state's request on the basis that that Riddle's speedy-trial rights were not violated because the reason for the delay was attributable to him because the state was prepared for trial in June but the trial was continued to accommodate Riddle's request for self-representation and advisory counsel.  *Id.*

The trial began on September 26, 2018 and Riddle was convicted by a jury on two of the counts.  *Id.*  In November 2018, the district court imposed a sentence of 48 months of imprisonment on count 1.

## II.    PROCEDURAL BACKGROUND BEFORE THE STATE COURTS

Petitioner later appealed his conviction to the Minnesota Court of Appeals, which ultimately affirmed the jury verdict and the district court rulings on Petitioner's post-trial motions related to the speedy trial act.  *See Riddle*, 2020 WL 773303.  Petitioner's appellant brief to the Minnesota Court of Appeals through his counsel raised two claims.  First, Petitioner argued for the reversal of his convictions because, according to Petitioner, the 184-day delay in bringing him to trial was unjustified and was attributable to the court and to the prosecutor's scheduling problems, and therefore violated his constitutional right to a speedy trial under Minnesota law and the Sixth Amendment to the United States Constitution.  (Dkt. 27-1 at 25-31.)

Second, Petitioner argued that he was entitled to a new trial because of prosecutorial misconduct, as the prosecutor intentionally elicited vouching testimony from the victim's sister; personally vouched for the victim in closing argument; relied on facts not in the record; and told the jury to hold Riddle accountable. (*Id.* at 32-37.) In support of his prosecutorial misconduct argument, there was no assertion or reference in this brief to the Minnesota Court of Appeals to a specific federal right (constitutional or otherwise), nor did he cite to any federal case law.

In a pro se brief to the Minnesota Court of Appeals, Riddle raised several issues, including but not limited to: (1) a speedy trial violation; (2) prosecutorial misconduct; (3) the district court erred by not allowing him to call witnesses to testify on his behalf and by not allowing him to call the prosecutor as a witness; (4) an improper limitation on confronting witnesses; (5) the victim and the police officers who testified at trial committed perjury; (6) the jury was tainted by the presence of two police officers in the venire panel, neither of whom were selected to serve as jurors; (7) the evidence presented was insufficient to support the jury's verdicts; and (8) the district court erred by admitting evidence of prior incidents of domestic abuse. *See Riddle*, 2020 WL 773303, at *7-8; (*see also* Dkt. 1-2 at 2-24).

The Minnesota Court of Appeals affirmed Riddle's conviction. With respect to Riddle's speedy trial claim, the Minnesota Court of Appeals found as follows:

> A defendant has three interests in a speedy trial: (1) preventing oppressive pre-trial detention, (2) minimizing anxiety and concern, and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193. There is no indication that any of these three interests were compromised. First, Riddle posted bail in March 2018, approximately two

> weeks after being arrested, and was at liberty until the conclusion of trial in
> October 2018. Second, his claims about anxiety and concern are undermined
> by his amenability to the continuances on May 21 and June 5, 2018. Third,
> he has not identified any witnesses who did not testify because of the delays
> or any other way in which his defense was affected by the delay. Thus, this
> factor does not weigh in favor of a finding of a speedy-trial violation.

*Riddle*, 2020 WL 773303, at *4. The Court of Appeals also rejected Riddle's

prosecutorial misconduct claim and his pro se arguments. *Id.* at *4-8.

In his Petition for Review to the Minnesota Supreme Court, Riddle, through his

counsel, raised two issues: (1) whether his conviction should be reversed because his

right to a speedy trial under the Sixth Amendment was violated; and (2) whether his

conviction should be overturned for the reasons stated in his pro se brief to the Minnesota

Court of Appeals. (Dkt. 27-1 at 41-48.) With respect to the Riddle's pro se arguments,

the Petition for Review submitted by his counsel did not list what those arguments

entailed or why they were valid, nor did it cite to a specific federal constitutional right, a

particular constitutional provision, a federal constitutional case, or a state case raising a

pertinent federal constitutional issue. Indeed, the only mention of the pro se arguments

before the Minnesota Court of Appeals raised in Riddle's Petition for Review was

"Petitioner requests this Court grant review of the issues argued in his pro se brief to the

court of appeals."[2] (*Id.* at 42.)

---

[2]    The Court notes that Riddle attempted to file a pro se petition for review with the
Minnesota Supreme Court, which was rejected because the court did not accept such
filings from represented parties who already had a petition filed on their behalf. (Dkt 27-
1 at 50-51; *see also* Dkt. 1-1- at 2-8.) The pro se petition for review raised issues with
respect to his speedy trial violation claims, as well as arguments that his Sixth
Amendment right to witnesses was violated because he was refused the right to call the

### III.    PROCEDURAL BACKGROUND BEFORE THE PRESENT COURT

Petitioner now applies for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  The initial Petition names the State of Minnesota, Ramsey County, Department of Correction/Moose Lake, John Choi, and Keith Ellison as Respondents.  (Dkt. 1 at 1.)  As best as this Court can discern, in his initial Petition Riddle generally asserts that he was denied a fair trial under Sixth Amendment.  (Dkt. 1 at 2.)  Riddle also argues that the appellate courts ignored all of his pro se arguments.  (*Id.* at 3-4.)  In addition, Riddle generally maintains that he was innocent of all of the charges against him, noting a conflict of interest between judge, prosecutors, and public defenders that deprived him of his right to a fair trial under the Sixth Amendment.  (*Id.* at 4-5.)  Petitioner asserts that "[t]his Petition has all of the constitutional violation [sic] within the documents in Exhibit B there is a copy of Petitioner pro-se brief from direct appeal with Federal case-law to support claims."  (*Id.* at 6.)  According to Petitioner. "[t]here is evidence of Minnesota Court violation Petitioner [sic] right to due process of the law, rights to call witnesses in his favor, limitation on confronting witnesses, Perjury, impartial judge and jury."  (*Id.* at 7.)  Exhibit B appears to be Petitioner's pro se brief to the Minnesota Court of Appeals. (*See* Dkt. 1-2.)

On June 5, 2020, Respondent Keith Ellison, as the Minnesota Attorney General, filed a Motion to Dismiss (Dkt. 6), seeking to dismiss the Petition against him for a lack of personal jurisdiction, or otherwise removing him from the caption of the case on the

---

prosecutor as a witness, a generic limitation on his right to confront witnesses, and that appeal judges erred with respect to prior act evidence.  (Dkt. 1-1 at 4-8.)

basis that a state prisoner bringing a federal habeas petition under 28 U.S.C. § 2254 must name as the respondent the state officer who has immediate custody of the prisoner, which is the warden of the prison in which the petitioner is incarcerated or the chief state penal officer.  (Dkt. 7 at 2-4 (citations omitted).)

On June 6, 2020, the Court issued the following Order with respect to the Petition in relevant part as follows:

> Under the Rules Governing Section 2254 Cases in the United States District Courts, a habeas corpus petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." Rule 2(c)(1)-(2).  Riddle's petition does not explicitly specify the grounds for relief or supporting facts, and instead makes general statements with reference to the state court record and state court appellate filings as a whole. (*See* Dkt. 1.)  For example, Riddle writes "Petitioner is requesting that this court review all the Petitioner claims and challenge all the Petitioner case-laws, which the Minnesota Courts refuse to do their job, which deny Petitioner a fair trial and an appeal 6th Amendment."  (*Id.* at 2.)  This does not comply with the Rules Governing Section 2254 Cases and is insufficient to put this Court or Respondents on notice of the specific reasons why Riddle believes his sentence is unlawful.  The Eighth Circuit explained in *Adams v. Armontrout*, that the Section 2254 Rules do not "require the federal courts to review the entire state court record of habeas corpus petitioners to ascertain whether facts exist which support relief." 897 F.2d 332, 333 (8th Cir. 1990).  Rather, the district court should be able to determine from the face of the habeas petition itself whether the particularized grounds for relief and facts warrant further habeas corpus review.  *Id.* at 334.  This Court cannot tell from the face of Riddle's petition which issues and supporting facts he intends to raise in the present petition.  Accordingly, this Court directs Riddle to file an amended petition that satisfies the requirements of Rule 2(c).  Failure to do so will result in a recommendation that this matter be dismissed without prejudice for failure to prosecute.  *See* Fed. R. Civ. P. 41(b).

* * *

> Finally, Riddle should note, in accordance with Attorney General Keith Ellison's already-filed motion to dismiss (Dkt. 6), that the only proper named party for a habeas petition is his current custodian.  *See* Rule 2(a) of Rules Governing Section 2254 Cases in the United States District Courts ("If the

petitioner is currently in custody under a state court judgment, the petitioner must name as respondent the state officer who has custody.")  Riddle has named multiple parties in his initial petition, some of whom may not be proper respondents.  The Court will more fully address this issue, along with issues raised in Riddle's other submissions if necessary, once Riddle has had an opportunity to file his amended petition.

(Dkt. 16 at 1-3.)  The Court ordered Riddle to "submit an amended petition setting forth his claims for relief consistent with the Rules Governing Section 2254 Cases by July 17, 2020."  (*Id.* at 3.)

On June 29, 2020, Riddle filed an "Amended Petition."  (Dkt. 17.)  The Amended Petition asserts that the State of Minnesota violated his Sixth Amendment rights and requested that this Court review his pro se brief.  (*Id.* at 2.)  Petitioner argued that the "case will show evidence of a [sic] three friends (judges, prosecutors, and Public defenders) against a stranger (citizens) court system."  (*Id.* at 4.)  Petitioner asserts that he was deprived of his right to a fair trial under the Sixth Amendment and fair appeal because the Court of Appeals failed to consider the case law within his pro se brief showing that his sentence was unlawful given that the court ignored evidence of his innocence.  (*Id.* at 6, 10.)  He also argued that his initial Petition contained all of the necessary facts.  (*Id.*)  Petitioner also asserted that all of the Respondents in his Petition, including Ellison and Choi, were essential to the present habeas action, and asserted that removing them from the action would serve as aiding and abetting their actions.  (*Id.* at 11; *see also* Dkt. 30; Dkt. 33.)  As part of his requested relief, Petitioner seeks an order requiring the prison libraries to reopen and for the Court to provide him with all of the authority it relies upon in its decisions.  (Dkt. 17 at 6, 12.)

Petitioner also filed an additional document labeled "Additional Ground" in which he alleges (1) an improper jury instruction in violation of Minnesota statutes; and (2) a claim that the jury was tampered with because one of the jurors was a police officer who knew the officers testifying against him at trial. (Dkt. 18 at 1-2.) According to Petitioner, these claims were raised on direct appeal through the Minnesota Supreme Court. (*Id.* at 2.)

Petitioner also filed a Supplemental 2254 Petition listing the grounds for which he claims that he was being held in violation of the Constitution, law, or treaties of the United States. Petitioner raised the following four grounds for relief:

(1)   Ground One—Speedy Trial Violation: March 1, 2018 Petitioner demanded a speedy trial. Trial did not start until October 1, 2018. All delays were because the State was waiting on a plea deal and the switching of public defenders without letting the defendant know about the switch until his speedy trial date. The next claimed delay was to appoint a new lawyer at the request of the judge and not the defendant on his speedy trial date because defendant wanted to go pro se and use his public defender as advisor counsel, which he claims was the result of corruption between the judge and the prosecutor.

(2)   Ground Two—"Deny Witnesses": Petitioner requested that the prosecutors be subpoenaed, which the trial court denied as favor to the prosecutor.

(3)   Ground Three—Due Process Violation: Petitioner was denied an omnibus hearing to challenge the state's evidence as there was no clear and convincing evidence that Petitioner put a gun to the victim's head in 2000 because Petitioner was in prison at the time.

(4)   Ground Four—"Prosecutorial Misconduct 6th Amendment Deny Fair Trial": Petitioner claims that the prosecutor knew that her witnesses were going to perjure themselves because the abuse claim related to the victim occurred in 2000, when he was in prison.

(Dkt. 19; *see also* Dkt. 34.)[3]

As part of the Supplemental Petition, Petitioner seeks in part to overturn and expunge his conviction from his record.  (Dkt. 19 at 15.)

Respondents argue that except for the speedy trial claim, the Supplemental Petition and submissions are procedurally barred for a lack of fair presentment to the Minnesota Supreme Court.  (Dkt. 26 at 5-8.)  With respect to Petitioner's claim that his speedy trial rights were violated, Respondents argued that the claim should be dismissed because in adjudicating the claim below, the Minnesota state courts did not base their decisions on an unreasonable application of clearly established United States Supreme Court case law, or an unreasonable determination of the facts.  (*Id.* at 8-12.)

Petitioner countered that the delay was not caused by him with respect to the speedy trial claim and that he did attempt to present his claims to the Minnesota Supreme Court in his pro se petition for review, which was rejected without basis.  (Dkt. 31.)

## IV.    PETITION FOR WRIT OF HABEAS CORPUS AND MOTIONS TO DISMISS

### A.    Legal Standard

A federal court's review of habeas corpus petitions filed by state prisoners is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

---

[3]    Petitioner also subsequently raised additional issues or "questions" for this Court to answer, not listed above, related to his petition, such as: whether the prosecutor showed evidence that a pattern of stalking took place, whether the prosecutor misused the publication notice status to win a conviction against Riddle with respect to the OFP against him; and whether the judge erred by not letting the jury hear evidence regarding his lack of notice with respect to the OFP.  (Dkt. 34.)  Not only are these questions procedurally improper but they should be dismissed for a lack of exhaustion as set forth more fully below.

Penalty Act of 1996 ("AEDPA").  Habeas relief under § 2254 is warranted in three circumstances: (1) when a state court decision was contrary to clearly established federal law, (2) when a state court decision involved an unreasonable application of clearly established federal law, or (3) when a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C § 2254(d)(1), (2).  Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Court's review is "limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 180-82 (2011).

A federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims.  *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter.").  The "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).  Under § 2254(d), a state court decision is "contrary to" the Supreme Court's precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Engesser v. Dooley*, 457 F.3d 731, 735-36 (8th Cir. 2006).  A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct

governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  In such situations, the court must "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.  A court may not find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Under this standard, courts "must deny a writ— even if [they] disagree with the state court's decision—so long as that decision is reasonable in view of all the circumstances." *May v. Iowa*, 251 F.3d 713, 716 (8th Cir. 2001) (citing *Williams*, 529 U.S. at 409-13).  "To the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." *Atley v. Ault*, 191 F.3d 865, 872 (8th Cir. 1999) (citation omitted).

In addition, when reviewing a state court decision, a federal habeas court "presumes that the state court's factual determinations are correct." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).  This deference applies to factual determinations made by the state trial and appellate courts.  *See Sumner v. Mata*, 449 U.S. 539, 547 (1981).  The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Whitehead v. Dormire*, 340 F.3d 532, 539 (8th Cir. 2003).

13

B.    **Analysis**

1.    **Proper Respondents**

As stated previously, Riddle names Minnesota Attorney General Keith Ellison, Ramsey County, Minnesota Department of Corrections, Ramsey County Attorney John Choi, and the State of Minnesota as Respondents in this § 2254 action.  Rule 2(a) of the Rules Governing Section 2254 Cases in the U.S. District Courts provides: "[i]f the petitioner is currently in custody under a state-court judgment, the petition must name as respondent **the state officer who has custody**."  (emphasis added).  As the Supreme Court has held:

> The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]."  The consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition.  This custodian, moreover, is "the person" with the ability to produce the prisoner's body before the habeas court.  We summed up the plain language of the habeas statute over 100 years ago in this way: "[T]hese provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary."  *Wales v. Whitney*, [114 U.S. 564, 574 (1885)].
>
> In accord with the statutory language and Wales' immediate custodian rule, longstanding practice confirms that in habeas challenges to present physical confinement—"core challenges"—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official . . . .

*Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004) (citations omitted); *see also id*. at 439 ("In challenges to present physical confinement, we reaffirm that the immediate custodian . . . is the proper respondent.").

Other courts in this District, relying the United States Supreme Court decision in *Padilla*, have concluded that a Minnesota attorney general is a not a proper party in a § 2254 action. *See, e.g.*, *Morey v. Titus*, No. 19-CV-0253 (NEB/HB), 2019 WL 1781544, at *1 (D. Minn. Mar. 20, 2019) ("Under these guidelines, Swanson is not an appropriate respondent in this action, and so the Court recommends her dismissal with prejudice."), *R.&R. adopted by* 2019 WL 1778953 (D. Minn. Apr. 23, 2019). Further, since Ramsey County and John Choi are county entities or employees, they are improperly included as Respondents in this action pursuant to the plain language of Rule 2(a), because they are obviously not state officers. In addition, courts have concluded that states and their agencies are not proper parties in a § 2254 habeas context based on Eleventh Amendment immunity grounds and on the grounds that they are not state officials under the plain language of Rule 2(a). *See Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005)). The petitions and related submissions should be dismissed on this basis alone.

The Court notes that Respondents have provided that Petitioner is currently incarcerated at the Moose Lake Minnesota Correctional Facility; the Warden at Moose Lake is William Bolin. (Dkt. 26 at 1 n.1.) Riddle has confirmed that "Bill Bolin is the warden of Moose Lake and his name can be added as well." (Dkt. 33 at 2.) However, even assuming that Warden Bolin can be properly substituted at this procedural posture for all of the other named Respondents, the Court finds that Riddle's habeas petition should nevertheless be dismissed for the reasons stated forth below.

### 2.    Exhaustion of State Remedies

An application for a writ of habeas corpus will only be granted if "the applicant

has exhausted the remedies available in the courts of the state." 28 U.S.C.

§ 2254(b)(1)(A). In conformance with the principles of comity and federalism, the

exhaustion doctrine requires state courts to have a "full and fair opportunity to resolve

federal constitutional claims before those claims are presented to the federal courts,"

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), where "the prisoner must 'fairly

present' his claim in each appropriate state court (including a state supreme court with

powers of discretionary review), thereby alerting that court to the federal nature of the

claim," *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted). Thus, "a prisoner

must fairly present his federal constitutional claims to the **highest available state court**,

(in Minnesota, the Minnesota Supreme Court), before seeking relief in federal court."

*Fraction v. Minnesota*, 678 F. Supp. 2d 908, 916 (D. Minn. 2008) (emphasis added).

Fair presentment requires the prisoner to "refer to a specific federal constitutional

right, a particular constitutional provision, a federal constitutional case, or a state case

raising a pertinent federal constitutional issue." *Cox v. Burger*, 398 F.3d 1025, 1031 (8th

Cir. 2005). Both the United States Supreme Court and the Eighth Circuit have noted that

"[i]t is not enough to recite only . . . the facts necessary to state a claim for relief, or to

make a general appeal to a constitutional guarantee as broad as due process." *Turnage v.

Fabian*, 606 F.3d 933, 936 (8th Cir. 2010) (internal quotation marks and citations

omitted). A claim has not been fairly presented if the presiding court "must read beyond

a petition or a brief (or a similar document) that does not alert it to the presence of a

federal claim in order to find material, such as a lower court opinion in the case, that does

so." *Baldwin*, 541 U.S. at 32. More specifically, "even if the opinion of the state court of

appeals does not make any mention of a federal claim, a brief submitted to that court that sets forth the federal constitutional basis for a claim can satisfy the requirement that the petitioner 'apprise the state court of his claim that the . . . ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment.'" *Fraction*, 678 F. Supp. 2d at 917 (quoting *Duncan v. Henry*, 513 U.S. 364, 366 (1995)). However, "[a] petitioner must present both the factual and legal premises of his claims to the state courts in order to exhaust the claims properly." *Dansby v. Hobbs*, 766 F.3d 809, 823 (8th Cir. 2014) (emphasis added). "The onus rests on the prisoner to present the substance of his federal claims in each appropriate state court . . . ." *Turnage*, 606 F.3d at 936 (quotation marks and citation omitted).

Save for his speedy trial claim, Riddle failed to properly present any of his federal claims raised in the present requests for relief before this Court through the Minnesota Supreme Court. As stated previously, all claims raised in a habeas petition must have been raised consistently throughout the state court proceedings, explicitly making reference to a federal constitutional right, case, or issue. *Cox*, 398 F.3d at 1031.

The Court acknowledges that Riddle raised federal issues as part of his pro se brief to the Minnesota Court of Appeals. However, while Riddle referred generally to the issues argued in his pro se supplemental brief to the Minnesota Court of Appeals in his Petition for Review to the Minnesota Supreme Court and asked the Minnesota Supreme Court to grant review of those issues, he did not present the claims or mention any violation of federal law in relation to the pro se claims in his Petition for Review. The

general references in the Petition for Review to the pro se supplemental brief filed with the Minnesota Court of Appeals may have raised the arguments to the Minnesota Supreme Court, but they are not sufficient on their face to identify any federal basis for them.  *See Baldwin*, 541 U.S. at 32 ("We consequently hold that ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."); *see also Glover v. Halvorson*, No. 19-CV-1238 (DSD/LIB), 2020 WL 519888, at *6 (D. Minn. Jan. 7, 2020) (string citation omitted), *R.&R. adopted*, 2020 WL 512977 (D. Minn. Jan. 31, 2020).  Indeed, "as other Courts in this District have held, 'incorporation' of a lower court decision or briefs submitted to such a lower court, without identifying the federal issue in the petition for review, is insufficient to fairly present a federal claim for the purposes of exhaustion."  *Foster v. Fabian*, No. 07-cv-4317, 2009 WL 921063, at *8 (D. Minn. Mar. 31, 2009) (citations omitted); *see also Ellis v. Minnesota*, No. 18-CV-342 (NEB/TNL), 2018 WL 6520568, at *3 (D. Minn. Oct. 30, 2018) (same) (collecting cases), *R.&R. adopted*, 2018 WL 6519135 (D. Minn. Dec. 10, 2018).

The Court acknowledges that Riddle attempted to file a pro se petition of review with the Minnesota Supreme Court, which was rejected because the court did not accept such fillings from represented parties who already had a petition filed on their behalf. (Dkt 27-1 at 50-51; *see also* Dkt. 1-1- at 2-8.)  As stated previously, the pro se petition for review raised the following issues: his speedy trial violation claim; that his Sixth Amendment right to witnesses was violated because he was refused the right to call the

prosecutor as a witness; a general argument that his right to confront witnesses was violated; and that the appellate court erred with respect to prior act evidence arguments. (Dkt. 1-1 at 4-8.)  However, courts have determined that claims raised that are not considered by the Minnesota Supreme Court due to a violation of a state procedural rule are unexhausted for the purposes of § 2254 petition.  *See*, *e.g.*, *Blevins v. Dep't of Corr.*, No. 13-CV-2796 PAM/SER, 2014 WL 4966910, at *11 (D. Minn. Oct. 3, 2014) (internal citation omitted) ("In the alternative, the Court considers whether Blevins's attempt to raise the same insufficient-evidence claim in his Pro Se Petition for Review to the Minnesota Supreme Court provides a vehicle for habeas review.  Because the Minnesota Supreme Court denied Blevins's Motion to Accept Petition for Review, the Minnesota Supreme Court did not consider the claim.  Therefore, the claim is unexhausted."); *Rivera v. King*, No. CIV. 10-3954 RHK/FLN, 2011 WL 4458729, at *6 (D. Minn. Aug. 12, 2011) ("Here, Petitioner did not raise the issue of ineffective assistance of counsel in his appeal to the Minnesota Court of Appeals.  Petitioner included this issue in his Pro Se Supplemental Petition to the Minnesota Supreme Court, but the Court did not accept that Petition and did not consider the merits of Petitioner's ineffective assistance of counsel claim.  Accordingly, Petitioner has failed to exhaust his state court remedies for his ineffective assistance of counsel claim."), *R.&R. adopted*, 2011 WL 4436149 (D. Minn. Sept. 23, 2011); *see generally Conley v. United States*, Civ. No. 13-1069 (PAM/JJK), 2013 WL 5567453, at *3 (D. Minn. Oct. 9, 2013) (noting that the Minnesota Supreme Court denied the defendant's motion to file a pro se supplemental petition for review because Minn. R. Crim. P. 29.04 does not permit it when the defendant is represented by

counsel).  As such, any claims raised in the pro se petition rejected by the Minnesota Supreme Court are unexhausted.

"When a state court remedy is available for a state prisoner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the 'stay and abeyance' procedure described in *Rhines v. Weber*, [544 U.S. 269 (2005)]."  *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005).  That said, when a prisoner has not exhausted his state court remedies for a particular claim, and state procedural rules preclude any further consideration of that claim, then the claim has been procedurally defaulted.  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991); *see also O'Sullivan*, 526 U.S. at 848 (citations omitted) (finding that a petitioner's failure to timely present federal claims to the state high court resulted in a procedural default); *Turnage*, 606 F.3d at 936 ("If a prisoner fails to present his federal claims to the state courts, those claims are generally considered procedurally defaulted.") (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc) (citation omitted)).  In other words, where there is still a state court remedy available, a previously unraised habeas claim is "unexhausted," but if there is no state court remedy still available, then the claim is "procedurally defaulted."  *See Armstrong*, 418 F.3d at 926 ("[I]f no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim . . . .'") (quoting *Gray v. Netherland*, 518

U.S. 152, 162 (1996)) (citation omitted); *see also Middleton v. Roper*, 455 F.3d 838, 855 (8th Cir. 2006) ("'If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now.'") (quoting *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir.)).

Here, the Court finds that Riddle's unexhausted claims are procedurally defaulted under *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976). Under the decision in *Knaffla*, after "direct appeal has once been taken, all matters raised therein, all claims known but not raised, and all claims that should have been known will not be considered upon a subsequent petition for postconviction relief." *Id.* at 741; *see also Sontoya v. State*, 829 N.W.2d 602, 604 (Minn. 2013). The *Knaffla* rule has been "consistently followed" for decades and serves as an independent state-law basis for procedural default. *See Murray v. Hvass*, 269 F.3d 896, 899-900 (8th Cir. 2001) (citations omitted). There is no indication that Petitioner did not know of any federal claims that he now attempts to assert as part of the present action. Moreover, the Minnesota Supreme Court rejected the pro se Petition for Review based on a procedural rule prohibiting the filing of pro se supplemental Petitions for Review, which means the claims in the pro se Petition for Review are procedurally defaulted. *See Hall v. Delo*, 41 F.3d 1248, 1250 (8th Cir. 1994) ("A federal claim has not been fairly presented to the state courts when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural law.") (citing *Coleman*, 501 U.S. at 729-30) (citation omitted); *see also Blevins*, 2014 WL 4966910 at *11 ("Arguably, the Minnesota Supreme Court denied the

Motion based on a procedural rule prohibiting the filing of pro se supplemental Petitions for Review, which means the claim is procedurally defaulted.") (citations omitted).

In sum, Riddle did not fairly present his claims to the Minnesota Supreme Court, and he cannot now present those claims to any Minnesota court pursuant to the rule in *Knaffla*. *See Murphy v. King*, 652 F.3d 845, 848-51 (8th Cir. 2011) (holding that a habeas petitioner was procedurally barred from raising a claim that he had failed to fairly present to the Minnesota Supreme Court). Where a claim is procedurally defaulted, federal courts are prevented from adjudicating the claim on the merits unless a petitioner can demonstrate cause and prejudice, "or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750 (internal quotation marks omitted).

"'[C]ause'. . . must be something external to the petitioner, something that cannot fairly be attributed to him . . . . For example, 'a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by officials' . . . made compliance impracticable . . . .'" *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488). "Prejudice" that will overcome a procedural default requires a petitioner to show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Armstrong v. Kemna*, 590 F.3d 592, 606 (8th Cir. 2010) (emphasis omitted) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). In this case, Riddle has not articulated the cause for his procedural default. Since he has not satisfied the cause component required to overcome

his claim's procedural default, it is unnecessary to address the prejudice component.  *See Edwards v. Bolin*, No. 19-CV-2984 (PJS/LIB), 2020 WL 4756574, at *16 (D. Minn. July 22, 2020) (citation omitted), *R.&R. adopted*, 2020 WL 4809688 (D. Minn. Aug. 17, 2020).

The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)), *cert. denied*, 516 U.S. 1161 (1996).  In other words, a petitioner cannot merely point to errors that allegedly occurred during the course of his state criminal proceeding; he must instead offer some new evidence which affirmatively demonstrates that he is, in fact, innocent of the crime for which he was convicted.  *See Edwards*, 2020 WL 4756574, at *16 (citations omitted) ("Likewise, Petitioner cannot meet the 'fundamental miscarriage of justice' exception because he failed to present any 'reliable new evidence' providing clear and convincing proof that he is actually innocent.").  Here, the "fundamental miscarriage of justice" exception is inapplicable, as Riddle has failed to provide any new evidence demonstrating that he is innocent of the crime for which he was convicted.

For all of these reasons, Riddle's procedural default of his claims (except for the speedy trial claim) cannot be overcome, and this Court cannot adjudicate the Petition on its merits as to those claims.  As such, the claims in the Petition and related submissions, save for the speedy trial claim which was raised on direct appeal through the Minnesota Supreme Court, should be dismissed on this basis.

### 3.     Speedy Trial Claim

Riddle was charged in December 2017 and arrested on February 28, 2018.  *See Riddle*, 2020 WL 773303, at *1.  On March 13, 2018, Riddle was released from custody after posting bail.  *Id.*  At a March 26, 2018 omnibus hearing, Riddle pleaded not guilty and demanded a speedy trial.  *Id.*  Riddle's trial was ultimately commenced on June 4, 2018.  *Id.*

With respect to this claim, the Sixth Amendment provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." U.S. Const. amend. VI.  When examining whether an individual's right to a speedy trial has been violated, courts look to four factors set forth by the United States Supreme Court: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  The four factors must be considered together in light of the relevant circumstances, and no one factor is dispositive or necessary to a finding that a defendant has been deprived of the right to a speedy trial.  *Id.* at 533.

With respect to the length of the delay, "[t]he Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences."  *United States v. Sprouts*, 282 F.3d 1037, 1042 (8th Cir. 2002) (citation omitted).  "[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case."  *Barker*, 407 U.S. at 530-31.  Generally, a delay of one year or more between a defendant's indictment and trial is presumptively prejudicial and

triggers a speedy trial analysis.  *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).[4]

The term "presumptively prejudicial . . . does not necessarily indicate a statistical

probability of prejudice; it simply marks the point at which courts deem the delay

unreasonable enough to trigger the *Barker* enquiry."  *Id.* (citation omitted).

Here, at most there was a 6-month delay between the charging of Riddle and the

commencement of his trial.  Therefore, this delay is not sufficient to trigger the *Baker*

analysis, and the Court concludes that Petitioner was not deprived of his Sixth

Amendment right to a speedy trial and should not be granted habeas relief on this claim.

*See Welton v. Smith*, No. 14-CV-3044 (ADM/HB), 2015 WL 9946402, at *5-6 (D. Minn.

Oct. 8, 2015) ("Since Petitioner was only **in custody** 124 days before his trial, the delay

is not sufficient to trigger a *Barker* inquiry.") (emphasis added) (citation omitted), *R.&R.*

*adopted by* 2016 WL 389962 (D. Minn. Feb. 1, 2016).

Even assuming that length of the delay was sufficient to trigger a *Baker* analysis,

the Court finds that the state court decision did not violate clearly established law nor was

based on an unreasonable determination of the facts.  The factors on the whole do not

support a finding that Petitioner's speedy trial right was impinged, especially where

Riddle contributed to the delay and he did not set forth any appreciable prejudice caused

by the delay.

---

[4]     The Court notes that this presumption is much longer than that set forth by
Minnesota law.  *See State v. Windish*, 590 N.W.2d 311, 315-16 (Minn. 1999) ("In
Minnesota, delays beyond 60 days from the date of demand raise a presumption that a
violation has occurred.") (citation omitted).

The first delay, on May 21, 2018, is attributable to Riddle because, as admitted in his brief to the Minnesota Court of Appeals, his second public defender requested a continuance to accommodate his schedule (Dkt. 27-1 at 22). *See Vermont v. Brillon*, 556 U.S. 81, 90-91 (2009) ("Because 'the attorney is the defendant's agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is also charged against the defendant.") (cleaned up) (quoting *Coleman*, 501 U.S. at 753). The second delay, on June 5, 2018, is attributable to Riddle because he wished to proceed pro se and had expressed mistrust of the public defender's office based on a conflict of interest. While Petitioner asserts that he was willing to have his previous counsel as stand-by counsel and proceed with trial, he does not dispute that had expressed mistrust of the public defender's office, leading to the trial court's decision to appoint counsel outside of the office. (Dkt. 27-1 at 23.) Further, with respect to the third delay caused by the availability of the State's witnesses, Riddle has not provided any evidence that this delay was deliberate on the part of the State. *See Barker*, 407 U.S. at 531 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.").

With respect to prejudice, the United States Supreme Court has explained the manner in which to assess prejudice:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532.  In the instant case, Petitioner was only subjected to approximately 13 days of pretrial incarceration.  In addition, there is no evidence—other than the speculative claims of presumptive prejudice—that the defense was impaired in any way, nor does Petitioner assert or provide any detail as to how the delay in prosecution prejudiced his defense.  While there is undeniably inevitable anxiety related to being tried for a crime, as noted by the underlying state courts, since he was not incarcerated when he invoked his right to a speedy trial (Dkt. 27-1 at 22) and without any evidence of detriment to his defense, the Court finds no evidence of prejudice so as to find that the state court erred when it found no speedy trial violation under the Sixth Amendment.

In sum, based on this Court's examination of the *Baker* factors, the Court finds that the state court decision with respect the speedy trial claim did not violate clearly established law or was based on an unreasonable determination of the facts.

### 4.    Request for Injunctive Relief Related to Prison Law Libraries

Riddle has requested an order from this Court for injunctive relief in the form requiring Minnesota to reopen its prison law libraries.  (Dkt. 17 at 12.)  However, a petition under § 2254 cannot be used to address a state prisoner's conditions of confinement, assuming that Riddle's request raises some type of access to the courts claim.[5]  *See Propotnik v. Minn. Dep't of Corr.*, No. CIV. 14-3799 PJS/JJK, 2014 WL

---

[5]    The Court notes that Riddle demanded that the Court provide him with all of the legal authority cited by this Court.  The Court, a neutral party, cannot provide such assistance to Riddle in this action.

5464832, at *2 (D. Minn. Oct. 27, 2014) ("Because district courts do not have jurisdiction over such conditions-of-confinement claims in a proceeding under 28 U.S.C. § 2254, this Court recommends that Petitioner's Eighth Amendment claims in Ground Two of the Petition be dismissed without prejudice.") (citations omitted); *see also Nelson v. Campbell*, 541 U.S. 637, 643 (2004) ("[C]onstitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of [the habeas corpus] core and may be brought pursuant to § 1983[.]"); *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973) (providing list of cases "establish[ing] that a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life") (citation omitted).  As such, any such access to courts claim should be dismissed without prejudice, and Petitioner's request for injunctive relief denied.

## V.    <u>CERTIFICATE OF APPEALABILITY</u>

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA").  *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing in this context, Riddle must show "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  This Court concludes that it is unlikely any other court, including the Eighth Circuit, would reach a conclusion contrary to that reached above.  Accordingly, it is recommended that a COA not be issued in this matter.

## VI.    **RECOMMENDATION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.    Petitioner Derrick Lee Riddle's Application for a Writ of Habeas Corpus by a Person in State Custody arising under 28 U.S.C. § 2254 (Dkt. 1) be **DENIED**;

2.    Petitioner Derrick Lee Riddle's Amended Application for a Writ of Habeas Corpus by a Person in State Custody arising under 28 U.S.C. § 2254 (Dkt. 17) be **DENIED**;

3.    Petitioner Derrick Lee Riddle's Additional Ground for Amended Petition (Dkt. 18); be **DENIED**;

4.    Petitioner Derrick Lee Riddle's Supplemental Petition (Dkt. 19) be **DENIED**;

5.    Respondents' Motions to Dismiss (Dkts. 6, 25) be **GRANTED**;

6.    Petitioner Derrick Lee Riddle's Motions for a Speedy Hearing (Dkts. 22, 32) be **DENIED** as moot;

7.    Petitioner Derrick Lee Riddle's Questions to the Courts/M[a]gistrate Judge (Dkt. 34) be **DENIED**;

8.    That this action be **DISMISSED WITH PREJUDICE** except for Petitioner's request for relief with respect to law libraries, which should be **DISMISSED WITHOUT PREJUDICE**; and

9.    No certificate of appealability be issued.

DATED: January 8, 2021                    *s/Elizabeth Cowan Wright*
                                          ELIZABETH COWAN WRIGHT
                                          United States Magistrate Judge

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).